No. 25-3537

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

ESTATE OF MOHAMMED J. ISAIFAN THROUGH THE ADMINISTRATOR OF HIS ESTATE, KIMBERLY VAUGHN

Plaintiff-Appellant

v.

JAME REA AND MATTHEW AKERS

Defendants-Appellees

---

Appeal from the United States Court for the Northern District of Ohio at Cleveland
21-cv-2197 – David Ruiz, District Judge

**BRIEF AND ARGUMENT FOR PLAINTIFF-APPELLANT**

Scott T. Kamin
Law Offices of Scott T. Kamin
564 E. Losey
Galesburg, IL 61401
(312) 307-8848
scotttkamin@aol.com
IL ARDC 6226855

Attorney for Plaintiff-Appellant

**ORAL ARGUMENT NEED NOT BE REQUIRED**

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure and Sixth Circuit Rule 26.1, counsel for Plaintiff-Appellant certifies that she is not a corporation, subsidiary or affiliate of a corporation.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT………………….2

TABLE OF AUTHORITIES…………………………………….4

JURISDICTIONAL STATEMENT……………………………..4

STATEMENT OF ISSUE FOR REVIEW………………………5

STATEMENT OF THE CASE…………………………………5

SUMMARY OF ARGUMENT…………………………………9

STANDARD OF REVIEW……………………………………..9

ARGUMENT……………………………………………………..10

CONCLUSION…………………………………………………...12

# TABLE OF AUTHORITIES

*Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248 (1986)……………...11

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)………………….11

*Ford v. Gen. Motors Corp*, 305 F.3d 545, 551 (6th Cir. 2002)………….11

*Jackson v. VHS Detroit Receiving Hosp., Inc*, 814 F. 3d 769, 775 (6th Cir. 2016)……………………………………………………………10

*Moore v. Phillip Morris Cos., Inc*, 8 F. 3d 335, 340 (6th Cir. 1993)………11

**Statutes, Rules, Constitutional Provisions**

Federal Rule of Civil Procedure 56(a)……………………………………10

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331. The Court of Appeals has subject matter jurisdiction pursuant to 28 U.S.C. § 1291. On June 23, 2025, the District Court issued a final order granting summary judgment to Defendants on all claims. On July 21, 2025, Plaintiff filed a timely notice of appeal with the District Court.

## STATEMENT OF ISSUE FOR REVIEW

Whether the District Court erred in granting Defendants' Motion for Summary Judgment when it held that there was no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law pursuant to Fed. R. Civ. P. 56(a) even though Plaintiff provided surveillance footage showing the excessive force used by Defendants, an Autopsy Report of Plaintiff's decedent as well as an eyewitness to much of the excessive force supporting the surveillance footage.

# STATEMENT OF THE CASE

This appeal seeks to establish that there is a genuine dispute as to material facts between Plaintiff and Defendants as to whether the defendants used excessive force when they shot and killed Plaintiff's decedent, requiring this Court to remand this case to the District Court, thus permitting a reasonable jury to find in her favor.

On December 15, 2019, the decedent stopped his car on a freeway and walked back toward his house on 1300 Brittain Rd. (R. 46, Rea Tr., PageID 34, lines 1-4). Nine people reported the incident to 911. Akron police reported in dispatch that a handgun was discovered in the car. Officers Akers and Rea were moonlighting for the Akron Municipal Housing Authority ("AMHA") at 1600 Brittain Rd. when they heard the dispatch. They learned that the car was registered to Mohammad J. Isaifan. (R. 45, Akers Tr., PageID 39, lines 4-10). According to Akers, the defendants decided to provide backup to the officers heading to the decedent's home. (R. 45, Akers Tr., PageID 39, lines 13-18). However, later in his deposition, Akers says that he and Rea "were checking the area." (R. 45, Akers Tr., PageID 43, lines 18-19).

According to Defendant Rea, the defendants agreed that they would drive down Brittain Rd. to their next AMHA assignment and if they saw the decedent, they would stop him (R. 46, Rea Tr., PageID 31, line 20 to 32, line 3). They spotted

the decedent in his blue and white camouflage one hundred yards away walking northbound on Brittain Rd. (R. 45, Akers Tr., PageID 44, 45, 50). Defendant Akers agreed that a purple and white camouflage pattern did not provide camouflage, however in his original statement to police, Akers said the decedent looked like he had the same training In the Marines, the vests contain pockets for grenades (R. 45, Akers Tr., PageID 49, lines 3-7). Defendant Rea thought the decedent might be carrying a grenade in his right hand – when the decedent was standing still with his hands raised. (R. 46, Rea Tr., PageID 57, lines 22-23). Yet when his hands came down, there was nothing in them. (R. 46, Rea Tr., PageID 60, line 23 to page 61, line 2). As the decedent walked away from him, Defendant Rea was directly behind the decedent. (R. 46, Rea Tr., PageID 61, lines 8-16). Defendant Rea never saw a holster on the decedent until he was walking away from the officers. (R. 46, Rea Tr., PageID 63, lines 18-19, page 64, lines 8-9). Defendant Rea fired his handgun into the decedent's back, but when the decedent continued to twist, Rea fired below the waist. However, the decedent kept twisting toward Officer Akers. (R. 46, Rea Tr., PageID 72, lines 14-19); Defendant Akers fired twelve times at the decedent: his magazine was fully loaded with eighteen bullets before the incident; after the incident six bullets were recovered from his pistol. (R. 45, Akers Tr., PageID 86, lines 13-18).

There is a surveillance camera across the street from the shooting. The defendants are seen on the surveillance footage driving their unmarked white sedan south on Brittain Road, waiting for northbound traffic to pass, and then turning left, parking on the east side of Brittain about 50-100 feet from the decedent. (R. 56, Ex. 1, Surveillance Footage ["Surveillance"], PageID :33-41). The defendants get out of the car and approach the decedent with their guns drawn and apparently issuing commands to him (there is no sound on the surveillance footage) and the decedent is standing still while holding his hands up. (R. 56, Surveillance, PageID :42-50). Akers keeps walking toward the decedent, who lowers his hands, bends slightly, and walks toward the officers. (R. 56, ex. 1, Surveillance, PageID :51-52). Defendant Rea takes the lead, passing Defendant Akers, as the defendants close the gap with decedent (R. 56, ex. 1, Surveillance, PageID :52-53). The decedent walks past Defendant Rea, heading east (away from the defendants). (R. 56, ex. 1, Surveillance, PageID :55-56). Defendant Rea, with his handgun still in his right hand, attempts unsuccessfully to grab the decedent with his left hand as the decedent continues past him. (R. 56, Surveillance, PageID :55, 56-57).

At this point, the witness Michael Williams corroborates the surveillance footage. The decedent continues to walk away from the defendants along tree line and when he gets a few feet away, with his back facing the defendant, at least one of the defendants opened fire about eight times into decedent's back, and the

decedent quickly falls headfirst to the ground (R. 56, Surveillance, PageID :58-1:02, R. 56, Ex. 2, Deposition of Michael Williams ["MW Tr"], PageID 58, lines 13-20; PageID 61, line 13; PageID 62, lines 16-20, PageID 63, lines 8-10). The decedent never twists or lifts his right arm prior to being shot by the defendants (R. 56, ex. 1, Surveillance, PageID :58-1:02; R. 56, ex. 2, MW Tr., PageID 54, lines 1-5).

But according to Defendant Akers, "when he starts drawing his pistol out of his holster (the decedent is) shifting his hips and shoulders to turn towards me counter-clockwise. Like I said, he's facing east, so he would be turning towards the north, so counterclockwise to me." (R. 45, Akers Tr. 76, lines 6-9).

An autopsy was performed on the decedent. (R. 56, ex. G., Report of Autopsy ["Report"]; PageID ex. 3). He had been shot three times in the upper back and four times in the buttocks area. (R. 56, ex. G, Report, PageID addendum: diagram of shots fired). The decedent was also shot five times in the left side of his body. (R. 56, ex. G, Report PageID 5-8, (diagram of shots fired)). The decedent was shot three times in the front of his body. One of shots, #1, headed sharply downward (R. 56, ex. G, Report PageID 5-8). The two other shots #11 and #15 were fired downward (the decedent is taller than the defendants). (R. 56, ex. G, Report PageID 7-8, diagram of shots fired).

Shot #10, shown as being fired into the front of the body, really enters into the left side of the chest (from the middle of the side of the left chest, i.e., the mid axillary line). (R. 56, ex. G, Report PageID 7).

## SUMMARY OF ARGUMENT

The case at issue contains a genuine issue of material fact that would permit a reasonable jury to find in favor of Plaintiff.

## STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment de novo. *Jackson v. VHS Detroit Receiving Hosp., Inc*., 814 F.3d 769, 775 (6th Cir. 2016).

## ARGUMENT

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Ford v. Gen. Motors Corp.,* 305 F.3d 545, 551 (6th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The moving party bears the initial burden of establishing that there are no genuine issues of material facts, which it may accomplish "by demonstrating that the nonmoving party lacks evidence to support

an essential element of its case." Id. (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). In response, the nonmoving party must present "significant probative evidence" that will reveal that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.,* 8 F.3d 335, 340 (6th Cir. 1993). The mere existence of a scintilla of evidence in support of the nonmovant's position will not suffice to avoid summary judgment. *Anderson*, 477 U.S. at 252.

Here, there is a clear issue of material fact. Plaintiff argues that all the shots from the defendants were unnecessary and excessive. She shows this excessive force by the surveillance camera footage, the autopsy report of Plaintiff's decedent and the eyewitness to the shooting. Defendants argue that the shooting was necessary given the circumstances: Defendant Akers claims that Plaintiff's decedent pulled his pistol from his holster and shifted his hips toward Defendant Akers, turning his gun toward Defendant Akers (R. 45, Akers Tr., PageID 86, lines 13-18); Defendant Rea explains that Plaintiff's decedent turned counter-clockwise past Defendant Akers and pointed his firearm directly at Defendant Rea. (R. 46, Rea Tr., PageID 72, lines 14-19).

The surveillance footage showed Plaintiff's decedent's interaction with the defendants, it shows him running away from the defendants and being shot in the back by Defendant Rea as Defendant Akers shoots decedent from the side and rear

until the decedent falls on the ground, never having attempted to turn in the direction of the defendants and never carrying or pointing a firearm.

The autopsy report corroborates the surveillance footage. The vast majority of the entry wounds entered his back and the plurality of the shots entered near decedent's buttocks. The surveillance footage shows that as decedent fell forward, his buttocks were the most prominent target on his body for several seconds as the defendants continued to fire. Moreover, Defendant Akers testified that the surveillance footage was accurate (R. 45, Akers Tr., PageID 106, lines 12-13).

The eyewitness to the shooting, Michael Williams, also corroborates the surveillance footage. The part of the incident that he saw clearly was the officers behind decedent, shooting him in the back and decedent falling forward, never holding a firearm in his right hand. According to the defendants, the decedent held the firearm in his right hand. (R. 45, Akers Tr., PageID 84, line 2**).** The evidence elicited at discovery is clearly "such that a reasonable jury could return a verdict for the non-moving party". *Anderson*, 477 U.S. at 248.

## CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court of Appeals reverse the District Court's grant of summary judgment.

Respectfully submitted,

s/ Scott T. Kamin

Scott T. Kamin
Law Offices of Scott T. Kamin
564 E. Losey Street
Galesburg, IL 61401
(312) 307-8848
scottttkamin@aol.com
PRO HAC VICE

Attorney for Plaintiff-Appellant

## TYPE VOLUME CERTIFICATION

Pursuant to Federal Rule of Appellate Procedure 32(7)(A), Scott T. Kamin certifies that this brief complies with the page limitation. The entirety of the principal brief contains 12 pages.

s/Scott T. Kamin

Attorney for Plaintiff-Appellant

## SERVICE ON APPELLANTS

I, Scott T. Kamin, hereby certify the following under penalty of perjury:

On November 9, 2025, I filed the foregoing document electronically and it is available for viewing and downloading from the ECF system. Service was accomplished by means of Notice of Electronic Filing upon:

Michael J. Defibaugh

mdefibaugh@akronohio.gov

s/Scott T. Kamin
Scott T. Kamin
Attorney for Plaintiff-Appellant

## RULE 30(B) DESIGNATION

| Record Entry | Date | Description |
|---|---|---|
| 1 | 11/18/2021 | Complaint |
| 42 | 5/15/2023 | Defense Motion for Summary Judgment |
| 45 | 5/15/2023 | Deposition of Matthew Akers |
| 46 | 5/15/2023 | Deposition of James Rea |
| 47 | 5/15/2023 | Deposition of Michael Williams |
| 49, 56 | 5/15/2023<br>7/17/2023 | Surveillance Tape of Incident at Issue |
| 56, ex. G | 7/17/2023 | Autopsy Report |
| 56, ex. D | 7/17/2023 | Expert Report of Jeronimo Rodriguez |
| 64 | 6/23/2025 | Opinion granting Summary Judgment |
| 65 | 6/23/2025 | Final Judgment |